JAMES CALLOWAY *v.* TRIPLETT HAMBY *et al.*

Where A contracted during the year 1863 or 1864 to convey a tract of land to B for life, remainder to her children in fee, in consideration of a number of negroes then sold and delivered by B to A, in which the latter was a tenant for life, and her children entitled to the reversion, all of whom joined in said conveyance except Eli, who was an infant, and one of the terms embraced in the contract to convey said land being that A would convey the said lands to B and her children whenever the infant Eli arrived at age, and would make " a good title " to his share of said slaves unto A, and the slaves were held by A till their emancipation: *Held*, that upon the coming of age of Eli, and his tendering a bond conveying his interest in said slaves to A, that this was a substantial compliance with the contract, and that A was bound to convey the land, according to the terms of his contract.

Civil action tried upon a case agreed before *Mitchell, J.,* at Spring Term, 1871, of WILKES Superior Court.

The facts of the case sufficiently appear in the opinion of the Court.

*Armfield* and *Bragg & Strong,* for plaintiff.
*Bailey,* for defendants.

The deed or other contract of an infant is not void, but voidable merely, and may be confirmed by him on his arrival at full age. *McCormick* v. *Leggett,* 8 Jones, 425. The contract is

binding on the other party, for he made it with full knowledge of the non-age, until the infant after arrival at age shall repudiate it. *Yarborough* v. *Yarborough*, 6 Jones Eq., 209; *Crawley* v. *Timberlake*, 2 Ire. Eq., 460; *Washburn* v. *Washburn*, 4 Ire. Eq., 306; *Barnawell* v. *Threadgill*, 3 Jones Eq., 50. In our case the infant ratifies, in every way he can by law, the contract.

RODMAN, J. On the 6th of September, 1863, or 1864, (the complaint and answer say 1863, and the case agreed says 1864, but the precise date is not material,) Rebecca Hamby was possessed of certain slaves for her life, and her children, the defendants, were entitled absolutely after her death.

Eli C. Hamby, one of the remaindermen, was an infant. On that day the plaintiff purchased the slaves from Rebecca and her children, who with the exception of Eli, conveyed to him. By a covenant of that date, he agreed with Rebecca, and all the remaindermen by name, " that upon the last named, Eli C. Hamby becoming of full age, and conveying to me, the said James Calloway, or my heirs or assigns, by deed in due form, a good title to his share or part, or in case of his death, then by his legal representatives, in and to those negro slaves, and their increase, &c., (describing them,) I will convey by deed, with special warranty, to the aforesaid Rebecca Hamby, a life estate, and then in fee simple in remainder to the other persons above named, all the land," &c., decribing the lands, and then, " upon the conveyance to me or my heirs, of the said share or part of said negroes, if done within two years after the said Eli C. Hamby, coming of full ;age, either by himself or his legal representatives ; otherwise to be null and void."

The plaintiff took the slaves into his possession at the time; and the defendants took possession of the land.

The slaves having been emancipated, the plaintiff in March, 1869, commenced this action against the children of Rebecca, (she having died) to recover the possession of the land. The

infant Eli came of age, after the commencement of the action, and tendered to the plaintiff a conveyance of his interest in the slaves.

The defendants by their answer, demand a specific performance by the plaintiff of his covenant to convey the land.

The plaintiff resists the demands of the defendants upon the ground, that the conveyance by him, was to be made only upon a condition precedent, viz: the conveyance to him by Eli, of a good title to his share in the slaves; which has not been performed, and which by reason of their emancipation, had become impossible before his arrival at full age.

If we look at the whole transaction between these parties, it will be seen that the covenant of the plaintiff was only a part of it. The real agreement may be gathered to have been an exchange of the slaves for the lands. But as by reason of the infancy of one of the owners of the slaves, he was unable at that time to convey his estate; the vendor of the land retained the title as a security in the nature of a penalty, that when he came of age, he would convey. If we were entitled to take this view of the transaction, it would follow from plain and familiar principles of equity, that the Court might relieve against the penalty; and as the act intended to be secured by it, was a small part of the whole consideration for the land, and the omission to do it, could be compensated by damages, would decree a conveyance of the land with compensation. And it would be immaterial whether the condition be precedent or subsequent. 2 Story Eq. Jur. secs 1315 and 1316,'p. 536 ;. *Hayard* v. *Angell*, 1 Vern. 223 ; *Bertie* v. *Lord Falkland*, 2 Vern. 340, S. C. ; 1 Salk, 231; *Taylor* v. *Popham*, 1 Bro. C. C. 168.

In reply it is said, that we are not entitled to take that view, because if there was any other contract for the conveyance of the land, than the covenant, it was not in writing; and as it is settled in this State, that part performance will not take the case out of the statute, such contract connot be enforced; but

that all the Court could do in such a case, on a complaint framed to such an end, would be, to decree that the plaintiff should repay the value of the slaves, as upon a failure of the consideration, and that as the present bill does not demand relief of the sort suggested, but a specific conveyance of the land, the only question for decision is, whether the condition can be said to have been performed within the meaning of the law?

Such a view of the case could only be necessary or useful in case it should be held, that the condition had not been performed. We therefore pass it over, and proceed to consider that question, which is the one on which the case was put by the counsel, for the parties, viz : whether the condition has in law been performed?

It has been contended by counsel, that a condition precedent must be literally performed. In one case, (1 Vern. 83, and perhaps in others,) that expression is used ; but the very case shows that the word is not to be taken literally.

A condition precedent must be strictly performed, and no Court of Equity any more than a Court of Law can dispense with performance, or relieve from any forfeiture or loss in consequence of a failure. But a strict performance can in reason mean nothing more than a substantial performance, one which is *bona fide*, and gives to the obligor in effect, all that by the intent of his contract he was to receive. Many cases establish this. A delivery of goods to a servant of the obligee, is a sufficient performance of a covenant to deliver to the obligee. *Staples* v. *Alden*, 2 Mood. R. 309 ; and so is *Turner* v. *Tebbutt*, 2 Y. and Coll. C. C. 225.

If a feoffment be upon a condition that the *feoffee* pay so much at such a day, and before the day, he dies, the heir may pay it. Lit. sec. 334, Co. Lit. 209, a. Eq. Ab. 107 ; *Marks* v. *Marks*, Str. 129.

In the note to " conditions," 6 Petersdorff's Abrid. XI, A. p. (68) 48, he collects the older authorities: "It is sufficient if the substance of the condition be performed. 1 Rol. 425, C. 8. If a condition be that he deliver letters patent, and he deliv-

ers an exemplification of them; that he *enfeoff*, and he conveys by lease and release; that he withdraw his suit and he discontinues," &c.

In *Tollner* v. *Marriott*, 4 Sim. 19, the condition of a legacy was, that the legatee should claim it within five years, by writing under his hand delivered to the executor; the filing of a bill by the residuary legatee for a settlement of the administration, was held a substantial compliance, although the conditional legatee was not a party.

Consent to marriage not written, sufficient, although written consent required by the will. *Worthington* v. *Evans*, 1 Sim. and S. 165.

Marriage in life time of father with his consent, is equivalent to marriage after his death with consent of trustees. *Wheeler* v. *Warner*, 1 Sim. and S. 305. G. covenanted to leave his wife a certain sum by will; he died *quasi* intestate, and she received that sum as a distributee; held, a performance. *Goldsmid* v. *Goldsmid*, 1 Swaust 211. See also, 1 Williams, Saun. 216, note. In this case we are of opinion that the condition was substantially performed. In coming to this conclusion, we do not forget, that although the plaintiff had the possession of the slaves until their emancipation, that possession was by virtue of the conveyance from Rebecca, and that he never at any time had possession under the defendants; nor do we lose sight of the fact, that the condition was that Eli should "convey a good title" to his share; and that at the time he tendered a conveyance, it was ineffective and valueless by reason of the previous emancipation of the slaves. In putting a meaning on the words, "convey a good title," we must look at all the circumstances of the transaction, and put ourselves in the point of view of the parties who used the words. On doing this, it appears to us that the good title to be conveyed, was that which Eli had on the 6th of September, 1864, the date of the plaintiff's covenant; and this title alone it was that the defendants took the risk of his conveying. If Eli had died before

coming of age, it cannot be doubted that a conveyance by his administrator would have sufficed.   If the slaves had died, it seems to us clear, that a tender of a conveyance by Eli, would have been a performance of the condition, although such a conveyance would have been as valueless as in the present case.

To put any other meaning on the words "good title," than that it was to be good at the date of the covenant, would make the defendants insurers, both of the lives of the slaves and of the permanency of their condition of servitude, and would give the contract an effect much beyond the intent of the parties. The whole transaction shows, that the risk of the destruction of the slaves by death, or the action of the government, was one of the incidents of ownership, which the plaintiff took on himself.   What Eli was expected to do, was not so much to make an original sale of his share, as to confirm an invalid sale previously made for him; and such confirmation would have relation back to the original sale.

The contracts of an infant are not void, but only voidable; and when confirmed, the disability of infancy is regarded as if it had never existed.

There are two remarkable English cases which have some bearing on this question.   *Watkey* v. *DeLancey,* 4 Doug. 354; and *Dudley* v. *Folliott,* 3 T. R. 584.

In each of these cases the defendants, during the American revolution, and while New York was in possession of the British, had sold lands within British occupancy to the plaintiffs, and covenanted for a *good title.*   Afterwards the lands were confiscated under the laws of New York, and the confiscation was ratified by the treaty of 1783, which related retrospectively to the 4th July, 1776.

It was held, that there was no breach of the covenant.

PER CURIAM.                                    Judgment affirmed.

NOTE.—Justice Boyden having been of counsel, did not sit in this case.